# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

VICKY H.,              *

            Plaintiff,        *

     vs.                *       Civil Action No. ADC-18-1088

COMMISSIONER, SOCIAL SECURITY   *
ADMINISTRATION,[1]           *

           Defendant.       *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On April 16, 2018, Vicky H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 16, 17), and the response thereto (ECF No. 18), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 17) are DENIED, the decision of the SSA is REVERSED IN PART, and the case is REMANDED to the SSA for further analysis in accordance with this opinion.

### PROCEDURAL HISTORY

On March 19, 2014, Plaintiff filed a Title II application for DIB, alleging disability

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner of Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

beginning on August 18, 2013. Plaintiff also filed a Title XVI application for SSI on March 25, 2014, alleging disability beginning on August 18, 2013. Her claims were denied initially and upon reconsideration on August 6, 2014 and October 30, 2014, respectively. Subsequently, on November 5, 2014, Plaintiff filed a written request for a hearing and, on February 27, 2017, an Administrative Law Judge ("ALJ") presided over a hearing. On April 26, 2017, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act [(the "Act")], from August 18, 2013, through the date of this decision." ECF No. 10-3 at 40. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on February 20, 2018, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the SSA. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On April 16, 2018, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On December 11, 2018, Plaintiff filed a Motion for Summary Judgment, and Defendant filed a Motion for Summary Judgment on February 8, 2019. On February 21, 2019, Plaintiff responded to Defendant's motion.[2] This matter is now fully briefed and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported

---

[2] On February 28, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

3

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration

4

requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R.

§ 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1),

404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, with regard to Plaintiff's DIB claim, the ALJ preliminarily found that Plaintiff met the insured status requirements of Title II of the Act through September 30, 2018. ECF No. 10-3 at 22. The ALJ then performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since August 18, 2013, the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments:

> degeneration of lumbar or lumbosacral invertebral disc, lumbago, spinal stenosis of lumbar region without neurogenic claudication, chronic pain syndrome, obesity, displacement of cervical intervertebral disc without myelopathy, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), major depressive disorder, allergic rhinitis, reactive airway disease, chronic bronchitis, right carpal tunnel syndrome, coronary artery disease, status post stenting.

*Id.* at 23. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 25. At step four, the ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Plaintiff] may frequently push and pull; may frequently handle and finger with the right upper extremity, the dominant arm; may occasionally stoop, kneel, crawl, crouch and climb ramps and stairs; may never climb ladders, ropes or scaffolds; must avoid hazard, such as heights; and may perform simple and routine tasks.

*Id.* at 28. The ALJ then determined that Plaintiff had past relevant work as a shipping and receiving clerk and a human resources assistant, but that she is unable to perform such work. *Id.* at 39. Finally, at step five, the ALJ found that, "[c]onsidering [Plaintiff]'s age, education, work

experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in the [Act], from August 18, 2013, through the date of this decision." *Id.* at 40.

## DISCUSSION

Plaintiff raises three allegations of error on appeal: (1) that the ALJ improperly accounted for Plaintiff's moderate difficulties in concentration, persistence, or pace in the RFC finding; (2) that the RFC determination is not supported by substantial evidence because the ALJ applied an improper legal standard to discredit Plaintiff's subjective symptoms in violation of *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017); and (3) that the ALJ failed to properly evaluate whether Plaintiff's impairments met or equaled Listing 1.04A. The Court agrees with Plaintiff's first argument, but Plaintiff's second and third arguments lack merit. Each alleged error is addressed below.

### A. The ALJ Erred At Step Four Of The Sequential Evaluation.

Several of Plaintiff's allegations relate to the ALJ's RFC determination. In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. 20 C.F.R. §§ 404.1545(a), 416.945(a) (ordering the ALJ to consider the entire record); SSR 96-8p, 1996 WL 374184, at *2 (defining the RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations. Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p, 1996 WL 374184).

1. The ALJ's RFC Determination Improperly Accounted For Plaintiff's Moderate Difficulties With Concentration, Persistence, Or Pace.

Plaintiff first contends that the ALJ's RFC assessment failed to adequately account for her moderate difficulties in concentration, persistence, or pace in violation of *Mascio*. ECF No. 16-2 at 7–11. Specifically, Plaintiff argues that the ALJ did not include a limitation to account for Plaintiff's moderate difficulties by merely stating that Plaintiff "may perform simple and routine tasks" and that the ALJ failed to explain why including a limitation was unnecessary. *Id.* at 8–10 (record citation and internal quotation marks omitted).

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Listings 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00. "Each [L]isting therein, consists of: (1) a brief statement describing its subject disorder; (2) 'paragraph A criteria,' which consists of a set of medical findings; and (3) 'paragraph B criteria,' which consists of a set of impairment-related functional limitations." *Rayman v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-3102, 2015 WL 6870053, at *2 (D.Md. Nov. 6, 2015) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)). If the paragraph A and paragraph B criteria are satisfied, the ALJ will find that the claimant meets the listed impairment. *Id.*

Paragraph B provides the functional criteria assessed by the ALJ and consists of four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b). The ALJ employs a "special technique" to rate the degree of a claimant's functional limitations in these areas. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). The ALJ's evaluation must determine "the extent to which [the claimant's] impairment(s) interferes with [the] ability to function independently, appropriately, effectively, and on a sustained basis" and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ uses a five-point scale to rate a claimant's degree of limitation: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A)(2)(b).

The functional area of concentration, persistence, or pace "refers to the abilities to focus attention on work activities and stay on-task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(E)(3). According to the regulations, examples of the ability to focus attention and stay on task include:

> Initiating and performing a task that [the claimant] understand[s] and know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id.*

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. Specifically, the Fourth Circuit recognized a difference between the ability to perform simple tasks and the ability to stay on task, stating that the latter ability concerns the broad functional area of concentration, persistence, or pace. *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*; *see also Carr v. Colvin*, No. TMD 15-685, 2016 WL 4662341, at *10 (D.Md. Sept. 7, 2016) (remanding for the ALJ to "determine on a function-by-function basis how Plaintiff's impairments affect his ability to work for a full workday").

Here, the ALJ's RFC assessment did not properly account for Plaintiff's difficulties in concentration, persistence, or pace. At step three of the sequential evaluation, the ALJ determined that "[w]ith regard to concentrating, persisting, or maintaining pace, [Plaintiff] has moderate limitations," and further explained that:

> [Plaintiff] reported that she could pay attention as long as she is not in a crowd. She further reported that she could follow written and spoken instructions. Although [Plaintiff]'s cognitive findings are generally normal on mental status examination, as noted above, [Plaintiff's] medical records reveal some reports of panic attacks and difficulty sleeping, which could lead to limitation in this domain of functioning.

ECF No. 10-3 at 27 (internal record citations omitted).

The ALJ then limited Plaintiff's RFC, in pertinent part, stating that Plaintiff "may perform simple and routine tasks." *Id.* at 28. "This Court has been clear that a restriction to 'simple tasks' or some variation on that phrase does not meet the requirement [set forth in *Mascio*]." *Capps v. Berryhill*, No. CBD-17-2438, 2018 WL 4616018, at *5 (D.Md. Sept. 26, 2018). Thus, unless the ALJ adequately explained why Plaintiff's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the RFC, remand is warranted.

Defendant contends that the ALJ complied with *Mascio* by explaining why Plaintiff's difficulties did not translate into a limitation in the RFC. ECF No. 17-1 at 13–17. While the ALJ engaged in a thorough analysis of Plaintiff's mental impairments at steps three and four, "[m]ost of the evidence discussed . . . in fact suggests no limitation at all." *Bradford v. Comm'r, Soc. Sec.*, No. WMN-14-2016, 2015 WL 1919643, at *3 (D.Md. Apr. 27, 2015) (remanding case where the ALJ's assessment lacked sufficient explanation of why the claimant had moderate limitations in concentration, persistence, or pace). At step three, the ALJ stated that Plaintiff "could pay attention as long as she is not in a crowd," "could follow written and spoken instructions," and had

12

"generally normal" mental status examination results. ECF No. 10-3 at 27. At step four, the ALJ repeatedly noted "stability" in Plaintiff's symptoms and mental status examinations, "good attention" on several occasions, and "logical thought flow and rational thought content." *Id.* at 34–35. "Without understanding why the ALJ believed [Plaintiff] to have a moderate limitation in concentration, persistence, or pace, as opposed to a mild limitation or no limitation, the Court cannot ascertain whether the moderate limitation found by the ALJ would warrant any RFC restrictions in [Plaintiff]'s ability to perform or sustain even unskilled work." *Bradford*, 2015 WL 1919643, at *3. Accordingly, this Court must remand the case to the SSA for further consideration of Plaintiff's level of limitation in the area of concentration, persistence, or pace. If the ALJ again finds that a moderate limitation is appropriate, the ALJ must explain the reasons for that finding in a manner consistent with *Mascio*.

>    2.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

Next, Plaintiff asserts that the RFC determination is not supported by substantial evidence because the ALJ applied an improper legal standard to discredit Plaintiff's subjective symptoms in violation of *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017). ECF No. 16-2 at 21–28. Defendant counters that *Lewis* has no bearing on this case because the ALJ identified proper bases beyond objective evidence to support her credibility findings, which included Plaintiff's own statements, her daily activities, her treatments, and her medications. ECF No. 17-1 at 21. The Court agrees with Defendant.

The United States Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

>    Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective

13

statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and her treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3).

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. 20 C.F.R. § 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain. 20 C.F.R. §§ 404.1529, 416.929; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [the claimant's] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on

14

objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

In the present case, the ALJ appropriately recognized her obligation to properly evaluate the credibility of Plaintiff's testimony with regard to her symptoms and the restrictions caused by her impairments in accordance with 20 C.F.R. §§ 404.1529 and 416.929. After analyzing the evidence in the record, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that "[Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." ECF No. 10-3 at 29.

While the ALJ acknowledged Plaintiff's testimony about the pain symptoms caused by her physical impairments, she pointed to several facts which were inconsistent with Plaintiff's claims of disabling pain. The ALJ referenced Plaintiff's own testimony that she performs a variety of regular, daily activities, including doing laundry and washing dishes with a neighbor, independently maintaining personal care, driving, grocery shopping with family, vacuuming, preparing simple meals, loading the dishwasher, and wiping down kitchen counters despite Plaintiff's alleged symptoms of "chronic, severe back pain," "constant pain in her hands" which causes her fingers to lock up and drop items unexpectedly, increased heart rate while walking, and shortness of breath while climbing stairs.[3] *Id.* at 28–29, 35–36. Furthermore, the ALJ noted that

---

[3] Plaintiff takes issue with the ALJ's reliance on Plaintiff's daily activities and argues, *inter alia*, that the ALJ improperly gave weight to Plaintiff's activities and failed to consider the duration and efficacy of Plaintiff's capacity to sustain such activities on a consistent basis. ECF No. 16-2 at 24–28. Even if the ALJ erred in evaluating Plaintiff's daily activities, any error is harmless as the ALJ considered several of the criteria set forth in 20 C.F.R. §§ 404.1529 and 416.929 to evaluate Plaintiff's credibility that otherwise supported the ALJ's conclusion. *See* ECF No. 10-3 at 28–36.

Plaintiff's testimony that "if she had been offered a sedentary position, she would have been able to perform it until the beginning of 2015, when she shattered her right ankle" was inconsistent with her allegation of debilitation since August 2013. *Id.* at 36.

Additionally, in accordance with 20 C.F.R. §§ 404.1529 and 416.929, the ALJ also considered Plaintiff's history of treatment and medication. *Id.* at 28–36. The ALJ observed the following: Plaintiff took Lortab and Neurontin to relieve her back pain and she did not experience side effects from the medication, *id.* at 28; Plaintiff's pain and rehabilitation specialist noted Plaintiff "could perform her activities of daily living even though she had pain" and treated Plaintiff solely with pain medication before referring her to physical therapy, *id.* at 30; Plaintiff was prescribed Lyrica and Robaxin for pain in November 2015, but her doctors declined to prescribe narcotic medications due to a previous urine drug screen that tested positive for cocaine, *id.* at 31; recent treatment notes indicate "that treating providers recommended only conservative measures for [Plaintiff]'s lumbar spine," *id.*; and "treating providers . . . recommended only conservative measures to treat [Plaintiff]'s right carpal tunnel syndrome" and "ordered only a brace for [Plaintiff]'s wrist and prescribed home exercises," *id.* at 32.

Therefore, the ALJ properly considered the evidence of record and found that the evidence contradicted Plaintiff's subjective claims regarding her impairments and their impact on her ability to work. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); *see also Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Rahe v. Astrue*, 840 F.Supp.2d 1119, 1136 (N.D.Iowa 2011) (finding that substantial evidence in the record of

16

claimant's reported activities supported the ALJ's adverse credibility determination where the claimant had "reported activities of daily living including preparing meals, completing household chores, laundry, and shopping, activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations").

## B. Substantial Evidence Supports The ALJ's Determination That Plaintiff Does Not Meeting A Listing.

Finally, Plaintiff argues that the ALJ erred at step three of the sequential evaluation by improperly evaluating whether Plaintiff's spine impairments met or equaled Listing 1.04A, outlined in 20 C.F.R. pt. 404, subpt. P, app. 1. ECF No. 16-2 at 11–21. The Court disagrees.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that her condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). The burden of proof is on the claimant to show that she meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither

the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (internal citations omitted).

Remand is appropriate where the "ALJ's opinion failed to apply the requirements of the listings to the medical record." *Id.* at 292; *Fox v. Colvin*, 632 F.App'x 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory analysis at step three necessitated remand). In evaluating whether an ALJ's listing comparison was proper, however, the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety. *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md. 2002) (holding remand is not warranted "where it is clear from the record which [Listing] . . . w[as] considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the reviewing c]ourt readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion").

Listing 1.04A states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1, 1.04A. In other words, a claimant must demonstrate that she meets all four requirements of Listing 1.04A for an ALJ to make a finding that her impairment meets or equals the listed impairment. *See Sullivan*, 493 U.S. at 530.

During her step three analysis, the ALJ explained why Plaintiff failed to meet the requirements of Listing 1.04A: "[T]he medical evidence does not establish compromise of a nerve root with evidence òf motor loss (atrophy with associated muscle weakness or muscle weakness), accompanied by sensory or reflex loss." ECF No. 10-3 at 26 (internal record citation omitted). Here, the ALJ identified at least two requirements that she found unsupported by Plaintiff's medical record: (1) compromise of a nerve root, and (2) motor loss accompanied by sensory or reflex loss. *Id.* However, Plaintiff argues that the ALJ failed to recognize Plaintiff's diagnosis of radiculopathy, which establishes compromise of a nerve root. ECF No. 16-2 at 16. Plaintiff also asserts that the ALJ failed to recognize objective evidence establishing both motor loss and sensory loss. *Id.* at 18.

Review of the medical record demonstrates that Plaintiff has an extensive history of spinal impairments, including diagnoses for spinal stenosis of the lumbar region, sciatica due to displacement of lumbar disc, and radiculopathy during the relevant period. ECF No. 10-8 at 504; ECF No. 10-9 at 218. However, the ALJ engaged in a lengthy, thorough narrative discussion at step four and highlighted evidence in the medical record that did not support a Listing 1.04A finding. ECF No. 10-3 at 29–31.

Specifically, the ALJ noted that in 2013, "[Plaintiff] had slightly reduced strength bilaterally in her lower extremities and pain and reduced range of motion in the lumbar spine. Yet, she had negative straight leg raising tests and *normal sensation and reflexes* in the lower extremities. [Plaintiff]'s coordination was also normal." *Id.* at 30 (emphasis added) (internal

19

record citations omitted). The ALJ then stated: "Physical examination notes from March and April 2014 state that there was tenderness of the lumbar spine, as well as questionable weakness on right foot and leg extension. However, [Plaintiff] had normal range of motion in the upper extremities, *normal* muscle tone, bulk, *strength*, gait, station, *reflexes and sensation*." *Id.* (emphasis added) (internal record citations omitted). Additional medical records from 2014 showed that "[Plaintiff] had a normal gait with normal muscle tone in her lower extremities. [Plaintiff] had 'mild' spasm in her lumbar spine, but normal range of motion in her hips, knees, and ankles and *normal strength*. She also had normal muscle tone of the lower extremities, and *normal sensation*, coordination and neurological functioning. . . . Her range of motion in the lumbar spine was limited, but she had *normal strength in the lower extremities*." *Id.* (emphasis added) (internal record citation omitted). The ALJ observed that "[t]hese same findings were noted in January 2015," that "[Plaintiff]'s motor strength and tone remained normal and she had no edema of the extremities" in October 2015, and that Plaintiff "had normal tone and motor strength" in December 2015." *Id.* at 31 (internal record citations omitted). Finally, the ALJ noted that "[Plaintiff] had normal neurological findings, as well as normal motor tone and strength in the upper extremities, normal reflexes and normal coordination" in 2016. *Id.* (internal record citations omitted).

In her discussion of Plaintiff's relevant medical evidence, the ALJ cited to substantial evidence in the record demonstrating that Plaintiff did not meet all of the requirements for Listing 1.04A. Plaintiff points to several medical records that she claims show both motor loss and sensory loss. ECF No. 16-2 at 18. In particular, Plaintiff cites findings from physical examinations in 2013 which show Plaintiff exhibited sensory loss in her right hand on those occasions. ECF No. 10-8 at 173, 175, 178. However, these medical records also show that Plaintiff exhibited "5/5 normal muscle strength" in all muscles and normal reflexes. *Id.* Other records cited by Plaintiff

also fail to show motor loss and sensory loss. *See* ECF No. 10-8 at 352 (showing "5/5 motor strength," and "normal motor strength [and] sensation"); ECF No. 10-8 at 584 (showing "intact" gross sensation); ECF No. 10-8 at 628 (showing almost fully intact motor strength, with scores ranging from 4/5 to 5/5); ECF No. 10-9 at 602, 610, 614 (showing decreased sensation in the right hand, but "5/5 normal muscle strength" in all muscles and "2/2 normal" for all reflexes); ECF No. 10-10 at 590 (showing normal nerve conduction test results). Such evidence indicates that the Listing 1.04A requirement of motor loss accompanied by sensory or reflex loss was not met. Therefore, in light of the evidence in the medical record demonstrating that Plaintiff did not meet the requirements for motor loss accompanied by sensory or reflex loss, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal Listing 1.04A.

## CONCLUSION

In summation, the Court finds that the ALJ improperly found that Plaintiff was "not disabled" within the meaning of the Act from August 18, 2013 through the date of the ALJ's decision. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) is DENIED, and the decision of the SSA is REMANDED for further proceedings in accordance with this opinion. In so holding, the Court expresses no opinion as to the ALJ's ultimate disability determination. The clerk is directed to CLOSE this case.

Date: 21 March 2019

A. David Copperthite
United States Magistrate Judge

21